UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD LOYA,<br><br>                Plaintiff,<br><br>        v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>                Defendant. | Case No.: 1:15-cv-01094-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Richard Loya ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1]      Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this action.
[2]      The parties have consented to the jurisdiction of the United States Magistrate Judge for all proceedings in this case, including entry of final judgment. (Docs. 7, 8).

1

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed his application for disability insurance benefits on February 6, 2012, and filed his application for supplemental security income on February 8, 2012. AR 223-26, 229-36.[3] Plaintiff alleged that he became disabled on May 10, 2009. AR 238. Plaintiff's applications were denied initially and on reconsideration. AR 140-44, 150-54. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ John Cusker held a hearing on October 25, 2013, and issued an order denying benefits on December 30, 2013. AR 20-32, 37-71. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-4, 18-19. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on October 25, 2013, in Fresno, California. AR 37-71. Plaintiff appeared and testified. He was represented by attorney Lars Christenson. AR 39. Impartial Vocational Expert ("VE") Jose Chaparro also testified. AR 39, 62-70.

At the time of the hearing, Plaintiff was 48 years old, was 5'4" tall, and weighed 280 pounds. AR 341. Plaintiff testified that he last worked as a supervisor at Wireless Eye, monitoring different websites for security. AR 42. In the last fifteen years, Plaintiff worked in security and did warehouse work, including driving a forklift for several hours a day. AR 42-44. Plaintiff also worked at a casino doing security, such as monitoring transfers of cash. AR 44-45. In addition, Plaintiff did line work for a cheese manufacturer, breaking down parts and cleaning them. AR 47.

Although Plaintiff alleged that he had been unable to work since May 10, 2009, he had a prior claim that was denied on July 8, 2011. Plaintiff testified that he had not done any work since that time, however, he volunteered at his child's school, taking phone calls and organizing events in 2010. AR 47-48.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When asked about his impairments, Plaintiff testified that his back pain and right leg, with his knee giving out, limit his ability to work. AR 48-49. He currently takes medications that include Vicodin, Neurontin, Soma and ibuprofen, all for pain or muscle spasms, and two different medications for hypertension. His medications do not relieve his symptoms completely, but he takes them so that he can get through the day. Plaintiff explained that they dull the pain a little bit and he does not have any side effects. He sees Gordon Lee, a physician's assistant, every couple of months to refill his prescriptions and for pain management. He also received four injections in his back a couple weeks prior to the hearing, which were done by Dr. Nasr at Kaweah Delta. AR 49-51.

Plaintiff testified that he lives with his eight-year-old son, who attends school. Plaintiff is able to dress and bathe himself without help. He also prepares meals, does laundry, does a little bit of shopping and does a little bit of housework. He cannot do any of his hobbies and he does not attend religious services or belong to any kind of social organization. AR 52-53.

When asked how he spends his time, Plaintiff testified that he does a little bit of housework, such as the dishes and dust-mopping the floors. He also tries to prepare dinner. AR 53-54. Plaintiff reported he can walk about half a block before resting and can stand about 15 to 20 minutes before sitting down and resting. He can bend a little bit at the waist, but it is hard to squat. He has problems with his right hand, and had reconstructive surgery on the tendons in his elbow. He does not have as much strength in his right hand as he does in his left hand. Plaintiff confirmed that he was able to work for many years despite this. The heaviest thing he can lift is a gallon of milk. He can sit, but not for a full two hours. AR 53-55.

In response to questions from his attorney, Plaintiff testified that his doctors have recommended surgery for his back if the pain management does not work, along with reconstructive surgery on his right knee for a possible meniscus tear. Plaintiff's doctor is waiting for clearance on his insurance, and the MRI ordered on his knee has not yet been approved. AR 55-57.

With regard to his chores, Plaintiff testified that he is able to do them by taking breaks. He will work for about five to ten minutes and then he has to sit down and take a break for about twenty minutes. He cannot do much yard work, and it takes him a long time to mow the lawn. AR 57-58.

Plaintiff confirmed that doctors at Bakersfield Neuroscience had limited him to lifting no more than 10 pounds. He was referred to Dr. Nasr, the pain management doctor, in an attempt to avoid surgery and to see if injections would work. Plaintiff testified that the injections were not providing significant relief of pain, but he did not take as much medication. He will have a follow-up appointment in four to six weeks. AR 58-59. Plaintiff further testified that his doctors have told him that he needs to lose weight, and "the heavier you are, the more it causes." AR 60. He has not been able to lose weight without exercising. He has tried to walk for exercise, but he cannot walk far without stopping and resting. His doctors did not recommend any exercises that did not involve walking. AR 60.

When asked about pain, Plaintiff testified that he has to lie down, stretch or rest during the day because of pain. On an average day, he probably spends half the day lying down. In an eight-hour day, he could stand and walk about one or two hours and sit about one hour. For the rest of the day, he would be lying down. AR 61-62.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE" Jose Chaparro. The VE testified that Plaintiff's past work was classified as industrial cleaner, gambling monitor, industrial truck operator, store laborer and security guard. AR 62-65. The ALJ then asked the VE hypothetical questions. In the first hypothetical, the ALJ asked the VE to consider a hypothetical individual with the same age, education and previous work experience as Plaintiff, with the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk, with normal breaks, for about six hours in an eight-hour work day, and sit, with normal breaks, for about six hours in an eight-hour work day, with unlimited pushing and pulling except to the extent indicated for lifting and carrying. The individual also could occasionally climb ramps and stairs, ladders, ropes and scaffolds, occasionally balance, stoop, kneel, crouch and crawl, and has no manipulative, communicative, or environmental limitations. The VE testified that this individual could perform Plaintiff's past work of gambling monitor and security guard. The VE further testified that there are other jobs in the national economy that such an individual could perform, including fast-food worker, cashier II, and cafeteria attendant. AR 65-66.

For the second hypothetical, the ALJ asked the VE to consider an individual that could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and walk six hours out of an eight-hour day, and could sit without restriction. This individual also could climb, balance, kneel and crawl occasionally and walk on uneven terrain, climb ladders and work at heights only occasionally. This individual had no visual or auditory limitations and no environmental limitations. The VE testified that this individual could perform Plaintiff's past work as gambling monitor, security guard, along with fast food worker, cashier II and cafeteria attendant. AR 67-68.

For the third hypothetical, the ALJ asked the VE to consider an individual who was unable to walk one city block, walk on rough or uneven ground or climb steps without the use of a handrail at a reasonable pace. This individual also has problems with balance, stooping, crouching and bending. The individual also must lie down or recline for 30 minutes at a time, approximately, every two hours. The individual could sit for 15 minutes at a time, stand for 30 minutes at a time, walk for 15 minutes at a time, and could sit for only two hours in the course of an eight-hour work day. This individual could carry 20 pounds rarely, 15 pounds occasionally and 10 pounds frequently, and the capacity for reaching with both upper extremities was limited to occasional, about 60 percent of the time. The individual could not push or pull arm or leg controls from a seated position. The individual also could climb stairs, but not ladders, scaffolds, ropes or ramps. Additionally, this individual would be off task 30 percent of the time, would be absent from work five days or more every month, would likely be unable to complete an eight-hour work day four days a month, and could only perform a job at 50 percent efficiency. The VE testified that there would not be any jobs available in the national economy for such an individual. AR 68-69.

For the fourth hypothetical, Plaintiff's counsel asked the VE to consider an individual with Plaintiff's same age, education and work experience who could stand or walk for three hours out of an eight-hour day, could sit for zero to two hours in an eight-hour day, could occasionally lift 10 pounds frequently, had symptoms severe enough to interrupt attention and concentration and would likely miss more than four days per month. The VE testified that this individual could not do any of Plaintiff's past work or any other work. AR 69-70.

///

**Medical Record**

The entire medical record was reviewed by the Court. AR 291-565. The relevant medical evidence is summarized here or referenced below as necessary to this Court's decision.

On April 23, 2012, Dr. Charles Fina, a state agency consultant, completed a Residual Functional Capacity Assessment form. Dr. Fina opined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, could sit about six hours in an 8-hour workday, and could push and/or pull without limitation other than shown for lift and/or carry. Dr. Fina further opined that Plaintiff could climb ramps, stairs, ladders, ropes and scaffolds occasionally and could balance, stoop, kneel, crouch, and crawl occasionally. Plaintiff did not have any manipulative, visual, communicative or environmental limitations. Dr. Fina explained that all of Plaintiff's scans were benign, i.e. showing minimal changes and that Plaintiff had no ongoing radiculopathy. AR 78-79.

On October 25, 2012, Dr. I. Ocrant, a state agency consultant, completed a Residual Functional Capacity Assessment form. Dr. Ocrant opined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday, and could push and/or pull without limitation other than shown for lift and/or carry. Dr. Ocrant further opined that Plaintiff occasionally could climb ramps, stairs, ladders, ropes and scaffolds and occasionally could balance, stoop, kneel, crouch and crawl. Plaintiff did not have any manipulative, visual, communicative or environmental limitations. AR 110-11.

On February 4, 2013, Dr. D. Lancy Allyn completed an initial orthopedic evaluation of Plaintiff's right knee. On physical examination, inspection of the right knee was unremarkable and there was no localized tenderness on palpation. Plaintiff had 0 to 110 of flexion, his ligaments showed good stability, McMurray testing was negative and patellar tracking was midline. Dr. Allyn reviewed x-rays of Plaintiff's right knee taken on August 1, 2012, which identified minor arthrosis with "slight sharpening" of the tibial spaces. Dr. Allyn opined that Plaintiff probably had a torn meniscus, but believed an MRI was reasonable before proceeding with any sort of surgical procedure AR 523-27.

On April 3, 2013, Dr. M. Rahimifar of Bakersfield Neuroscience & Spine Institute conducted an evaluation of Plaintiff's low back pain. Plaintiff complained of low back pain radiating to the right leg all the way down to the knee associated with numbness and tingling. Plaintiff reported that his pain was constant, worse when active, and had worsened in the last six months. On physical examination, Plaintiff's range of motion of his extremities was intact. On neurological examination, Plaintiff's motor function in his right leg was 4/5 with knee extension and dorsiflexion of the foot. His left leg was 5/5 globally. Additionally, sensation was decreased to touch at L5 distribution right side. His range of motion decreased at 35 degrees and was limited, and his straight leg raise was positive on the right side. Dr. Rahimifar identified that Plaintiff had low back pain, right leg weakness at L5-S1, Right L5 numbness and obesity. Dr. Rahimifar recommended an MRI of the lumbar spine and x-rays. Plaintiff was limited to no weight lifting over 10 pounds. AR 502-03.

On May 10, 2013, x-rays of Plaintiff's lumbar spine were within normal limits and his MRI revealed "diffuse lumbar degenerative disc disease" and "L5-S1 3 to 4 mm foraminal disc bulges producing mild bilateral L5 ganglionic compression." AR 474, 475-76.

On May 20, 2013, Plaintiff received followed up with Bakersfield Neuroscience & Spine Institute after his MRI. It was recommended that Plaintiff undergo injections, with follow-up in three months after completion of the injections. AR 529.

On August 15, 2013, Plaintiff underwent a lumbar epidural steroid injection at L5-S1. AR 553-54.

On October 16, 2013, Plaintiff underwent nerve root blocks at Kaweah Delta Health Care District. AR 557-58.

On November 5, 2013, Plaintiff received follow-up treatment at Bakersfield Neuroscience & Spine Institute. Plaintiff was to complete his injections and follow-up in four months. AR 564.

On December 10, 2013, Plaintiff was scheduled for an injection with follow-up treatment in six weeks. AR 556.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled. AR 23-32. More particularly, the ALJ found that Plaintiff

had not engaged in substantial gainful activity since May 10, 2009, his alleged onset date. AR 25. Further, the ALJ identified early degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee with chronic pain and obesity as severe impairments. AR 25-26. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments. AR 26-27.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work. Plaintiff could lift and/or carry twenty pounds occasionally, ten pounds frequently, could stand and/or walk with normal breaks for about six hours in an eight-hour workday, and sit with normal breaks for about six hours in an eight-hour workday. Plaintiff's pushing and pulling were unlimited except to the extent indicated for lifting and carrying. He occasionally could climb ramps, stairs, ladders, ropes and scaffolds and occasionally could balance, stoop, kneel, crouch, and crawl. Plaintiff had no manipulative, visual, communicative or environmental limitations. AR 27-30. The ALJ found that Plaintiff could perform his past relevant work as a gambling monitor and security guard. AR 30-31. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act from May 10, 2009, through the date of decision. AR 31-32.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's

determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In his opening brief, Plaintiff contends that the ALJ erred by (1) failing to properly assess probative medical source opinions, and (2) failing to provide clear and convincing reasons for finding Plaintiff not credible.

## DISCUSSION[4]

### I.     The ALJ Properly Assessed the Medical Source Opinions

Plaintiff argues that the ALJ erred by rejecting the opinion of the examining physician, Dr. Rahimifar, in favor of the non-examining state agency consultant. Specifically, Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Rahimifar's opinion that Plaintiff could not lift more than 10 pounds. (Doc. 10, pp. 5-7).

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

---

[4]     The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where an examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the examining physician's ultimate conclusions. *Id.* If the examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31. The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a physician—even a treating physician—if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871, 874-75 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-601 (9th Cir. 1999).

Plaintiff contends that the ALJ erred by rejecting Dr. Rahimifar's lifting limitation. In this instance, the ALJ gave no weight to Dr. Rahimifar's opinion that Plaintiff should not lift more than 10 pounds because there was "no evidence that this was meant to be more than a temporary restriction." AR 30. The ALJ also considered that this restriction was not mentioned in the Plaintiff's follow-up appointment in May 2013. *Id.* Plaintiff now argues that the ALJ's determination was based on mere speculation and that the ALJ had a duty to develop the record related to the lifting restriction.

Although Plaintiff argues that the ALJ's conclusion regarding the temporary nature of the lifting restricting "amounts to speculation," the Court finds that the ALJ's determination was a reasonable interpretation of the evidence. Dr. Rahimifar restricted Plaintiff's lifting in April 2013 pending completion of x-rays and a MRI of the lumbar spine. AR 532-33. However, the x-rays ordered by Dr. Rahimifar were "within normal limits" and the MRI showed only diffuse lumbar degenerative disc disease and disc bulges producing "mild" bilateral L5 ganglionic compression. AR 474, 475-76. Following a review of the MRI and x-rays, it was recommended in progress notes that Plaintiff undergo injections and continue his medications, but no lifting or other restrictions were identified. AR 565.

Additionally, Plaintiff points to no evidence indicating that the lifting restriction was to continue indefinitely. Instead, Plaintiff attempts to argue that because the progress notes indicated "no change since last visit" (AR 529), Dr. Rahimifar's lifting restriction still applied. However, this argument is not persuasive given that the progress notes, consistent with the ALJ's determination, did not identify any lifting restrictions following review of Plaintiff's MRI and x-ray results. AR 565. Further, subsequent treatment records related to Plaintiff's back treatment did not identify any lifting restrictions. AR 541, 545-46, 548-49, 553-54, 556-65. When a medical opinion is not supported by objective evidence, that opinion properly may be rejected. *Burkhart v. Bowen*, 856 F.2d 1335, 1339–40 (9th Cir. 1988) (ALJ properly rejected treating physician's opinion which was unsupported by medical findings, personal observations or test reports); *Batson*, 359 F.3d at 1195 (an ALJ may properly reject a physician's opinion that is conclusory and unsupported by objective medical findings); *see also* 20 C.F.R. §§ 404.1527(c)(3),(4) (in weighing a medical source opinion, the ALJ will consider the explanation and medical evidence the doctor provides in support of his opinion, as well as the consistency of the opinion with other evidence in the record). The Court therefore finds that substantial evidence supports the ALJ's evaluation of Dr. Rahimifar's lifting restriction.

Insofar as Plaintiff contends that the ALJ should have developed the record concerning the temporary nature of Dr. Rahimifar's lifting restriction, this contention is unavailing. An ALJ's duty to develop the record is triggered if there is ambiguous evidence or the record is inadequate for proper evaluation of evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). When such a

11

duty is triggered, an ALJ can develop the record by: (1) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines the ability to resolve the disability issue; (2) subpoenaing or submitting questions to the claimant's physicians; (3) continuing the hearing; or (4) keeping the record open for more supplementation. *Tonapetyan*, 242 F.3d at 1150; 20 C.F.R. § 404.1517.

Here, the ALJ's duty to develop the record further was not triggered. The ALJ properly relied on record evidence that Dr. Rahimifar's lifting restriction was not reiterated in subsequent progress notes. Further, the ALJ kept the record open after the hearing for additional medical records related to Plaintiff's treatment. AR 51-52. The fact that the ALJ kept the record open after the hearing for Plaintiff to submit additional evidence is sufficient to satisfy any duty to develop the record. *Tonapetyan*, 242 F.3d at 1150; *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ's indication to plaintiff and her counsel that he would keep the record open so that they could supplement her doctor's report satisfied ALJ's duty to develop the record).

Finally, the ALJ gave great weight to the opinions of the state agency medical consultants, who opined that Plaintiff could perform light work with postural limitations consistent with the RFC. The ALJ found that these opinions were supported by specific references to the record and consistent with the record. AR 30. A non-examining physician's opinion may constitute substantial evidence when it is consistent with other independent evidence in the record. *Tonapeytan*, 242 F.3d at 1149. Further, the ALJ has the responsibility for resolving conflicts in the record, and a court will not disturb an ALJ's findings if they are supported. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Here, the ALJ appropriately concluded that the opinions of Drs. Fina and Ocrant were supported by specific references to the record and consistent with other evidence in the record. AR 30. For instance, the ALJ cited objective record evidence from February 2013 that x-rays of Plaintiff's right knee showed only minor arthrosis. AR 29, 523-27. Additionally, the ALJ noted that MRI scans in May 2013 revealed only diffuse lumbar degenerative disc disease and disk bulges at L5-S1 produced only mild bilateral L5 ganglionic compression. AR 29, 474, 475-76. The ALJ also considered Plaintiff's follow-up treatment at Kaweah Health Care District in September 2013, which showed some improvement in lower back pain following injections and full muscle strength in his bilateral lower

extremities. AR 29, 541. There is ample medical evidence in the record to support the ALJ's resolution of the differing opinions between the examining and reviewing physicians, such that his decision is supported by substantial evidence.

## II. The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff argues that the ALJ did not provide clear and convincing reasons for finding Plaintiff not credible. (Doc. 10 at 7-11).

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings and provides clear and convincing reasons for doing so. *Id.* The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."). Factors an ALJ may consider include: (1) the claimant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

At the first step of the analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 29. At the second step, however, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. In so doing, the ALJ provided clear and convincing reasons for finding Plaintiff not fully credible. AR 29-30.

The ALJ properly determined that while Plaintiff's physical and neurological exams and radiological evidence might reasonably be expected to produce some of Plaintiff's symptoms and limitations, there was evidence of "exaggeration and inconsistent testimony." AR 29. An ALJ may

discount a claimant's testimony based on inconsistent testimony and symptom exaggeration. *See Smolen*, 80 F.3d at 1284; *Thomas v. Barnhart,* 278 F.3d 947, 960 (9th Cir. 2002) (ALJ rejected claimant's testimony based in part on evidence of symptom exaggeration). Here, the ALJ cited evidence that Plaintiff initially testified that he spent most of his days performing household chores with breaks in between (AR 52-54), but when later questioned by his representative, Plaintiff changed his testimony and reported that he spent most days lying down (AR 61-62). AR 29. The ALJ also cited Plaintiff's allegations that he had no strength in his right upper extremity, but found that Plaintiff was not seeking treatment for it and a review of the medical evidence did not indicate any abnormality. AR 29, 54-55. Additionally, the ALJ referenced Plaintiff's exaggerated statement to a physician's assistant that Dr. Allyn was considering a right knee replacement, when Dr. Allyn reported only a probable torn meniscus. AR 507-08, 523-27. Plaintiff has not adequately challenged any of these findings, and the Court finds that they are specific, clear and supported by the record.

Additionally, the ALJ discounted Plaintiff's credibility because his activities of daily living were not as limited as alleged. AR 29-20. An "ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations and quotation marks omitted); *see also Morgan*, 169 F.3d at 600 (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific and substantial reason undermining the claimant's credibility). Here, the ALJ noted that Plaintiff volunteered at his son's school for an entire school year and that Plaintiff was able to care for his young child at home without assistance. AR 47-48, 52. The ALJ properly cited these activities in support of his credibility determination. *See Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) (claimant's testimony about her daily activities, which included attending to the needs of her two children and daily going to places such as her son's school, undermined her allegations of totally disabling pain).

The Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's credibility, which were supported by substantial evidence in the record.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Richard Loya.

IT IS SO ORDERED.

Dated:   **February 8, 2017**                    /s/ *Barbara A. McAuliffe*
                                                          UNITED STATES MAGISTRATE JUDGE